**FILED**
APR 2 5 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARINE STEPHENS<br>6206 8th Street, NW<br>Washington, DC  20011-1923<br>(202) 882-8349<br>       Plaintiff,<br><br>Vs<br><br>MICHAEL WYNNE<br>Secretary of the Air Force<br>1670 Air Force Pentagon, SAF/OS<br>Washington, DC  20330-1670 | CASE NUMBER  1:06CV00751<br><br>JUDGE: Ellen Segal Huvelle<br><br>DECK TYPE: Employment Discrimination<br><br>DATE STAMP: 04/25/2006 |

## COMPLAINT

Defendant behavior was in retaliation for my EEO activity in 1992. The defendant took the adverse personnel action to silence me because of my participation in the protected EEO activity. Defendant used force that wasn't necessary, wanting to cause me to have a nervous breakdown. There were people at Andrews AFB who feared for my safety. The United States Air Force of America did a full-blown investigation in this case. My dismissal (Termination) was in retaliation for filing complaints with the EEO, Bolling AFB in 1992.

I am trying to convey exactly what happen here. I am trying to paint a picture so as to establish a casual link between the protected EEO activity and the adverse employment action. Zondra J. Crumley was hired on 2 November 1990. On 8 November 1990, I went to COL Richard J. Hampton to complain about Ralph Riccio making as ass himself in the work place. I received a Notice of Reprimand, dated 18 January 1991. COL Richard J. Hampton is starting to lay ground work here for Zondra J. Crumley to put her

1

wheels in motion. Building a foundation, preparing to support Zondra J. Crumley's actions. I went to COL Richard J. Hampton to complain about Ralph Riccio trying to force himself on young women in the office, overtures unwanted advances. However, I was not the first person to complain to COL Richard J. Hampton about Ralph Riccio's behavior in the work place. Mrs. Joan Zue complained to COL Richard J. Hampton about Ralph Riccio's behavior before she retired, which was approximately May 1990. I made a second complaint on 8 November 1990, which resulted with a Notice of Reprimand, dated 18 January 1991. (Ralph Riccio resigned from his position approximately July 1991.)

On 18 January 1991, when COL Richard J. Hampton called me into his office, he explained that he had decided to give me a Notice of Reprimand, for the malicious gossip. I place my hand out took the document and I thank him for it. But, I could see that COL Richard J. Hampton wanted so deeply to slit his throat, chop off his right arm, and rip the seat of his pants; but I couldn't tell just which one he wanted to do first. (Snafu – Military slang for situations like this.) The Notice of Reprimand, dated 18 January 1991 does not have a leg to stand on.

The U. S. Air Force of America gives a mandatory meeting for all new comers who are to work on base. And, in this mandatory meeting they stress the fact/they talk about the things that YOU MUST NOT DO/YOU WILL NOT DO while working on the Air Force Base. Had I not reported Ralph Riccio's behavior, it could have been mis-construed that I (Clarine Stephens) was being used as a lookout person for Ralph Riccio. But as it turns out, COL Richard J. Hampton, The Commander, was the lookout person for Ralph Riccio's most unprofessional behavior.

Fran Gianino, Chief, Contract Administration retired in December 1989. Ralph Riccio was the successor to Fran Gianino. Ralph Riccio was my supervisor when I received the Notice of Reprimand. But, approximately April 1991, there was an organization change at the Contracting Center, 1100 CNS/CNC, Building 3534, Andrews AFB. All of the Construction Administrators had to be placed in the same section with the Construction Buyers; and all of the Service Administrators were placed in the same section with the Services Buyers. During the course of this change, is when Zondra J. Crumley became my supervisor.

On 18 November 1991, for some strange, unknown reason, Zondra J. Crumley gave me a letter for a mandatory appointment for an interview with social actions, 1776 MSSQ/ Social Actions. When I received this letter, I though that this was a joke. Because to me, this letter is for a person abusing drugs and alcohol. I went directly in to see Mr. Jack E. Bynane and I wanted to know what was going on. Mr. Jack E. Bynane said "Clarine, I had nothing to do with putting this letter together. But, I want you to make sure that you keep the appointment". And, then Mr. Jack E. Bynane started talking about Zondra J. Crumley's history. Because Mr. Jack E. Bynane did not know at the time that I knew this information already.

On 20 November 1991, I kept the social actions interview. Zondra J. Crumley was at the social actions, 1776 MSSQ/Social Actions when I arrived. When SSGT Thomas E. Brown called me into his office, he explained to me that during the course of the meeting with Zondra J. Crumley, she stated that I had threaten to hit her in the office. (The only thing that I could think here was that Zondra is trying to set her ducks in a row, setting traps for me to fall in).

3

On 2 December 1991, the Notice of Proposed Suspension for Two-Days;

On 30 December 1991, Two-Days Suspension;

On 30 January 1992, the Out of Cycle Rating, with the Withheld With-In Grade (which was due 9 February 1991).

On 11 February 1992, The Notice of Opportunity to Improve Performance to an Acceptable Level.

When I worked at Andrews AFB, I was a member of the Union. I filed a grievance with the AFGE-GAIU Council of HA USAF Locals, AFL-CIO for: The Two-Day Suspension, dated 30 December 1991 (I was also charged LWOP LW along with this suspension); The Out of Cycle Rating, dated 30 January 1992, along with the Withheld With-In Grade, dated 30 January 1992 (which was due 9 February 1992). My union representative was Nancy J. Euell. Joanne Groves was the Employees Relations Specialist, AFDW Civilian Personnel. Joanne Groves attend the union meetings. I knew from the start that nothing good would come out of these union meetings; because, in accordance with the memorandum of agreement between the Commander, AFDW, and the AFGE, the step one grievance had to be submitted, in writing, to the first-level supervisor. (The Commander, COL Richard J. Hampton, and the first-level supervisor Zondra J. Crumley). I knew that I would not get any satisfaction at this level. Not any of my grievances made it to arbitration. After the Withheld With-In Grade was filed with the union, I decided to go to the EEO, Bolling AFB. Because, I was not making and progress with the union.

But, during the first union meeting, I decided to tell Zondra J. Crumley where I knew her from. I explained that I had seen her on National Television - 60 Minutes Broadcast, and also; A Current Affair, FOX - Channel 5. This was like pouring salt into an open wound. Zondra J. Crumley was airing out her dirty laundry on TV. Also I worked at the Walter Reed Army Medical Center for twenty years. And, approximately June, July or August 1983, Zondra J. Crumley came to Walter Reed Army Medical Center, Purchasing and Contracting Branch for an interview. In 1983, my supervisor Jennie Curtin GS-1102-12 retired. When the interviews were held by COL Fred P. Sharp, Commander and Peggy Moss, Deputy, Zondra J. Crumley was one of the candidates seeking the position. Zondra J. Crumley was not selected for the position, because during the course of the interview, COL Fred P. Sharp and Peggy Moss called to Arizona to do a background check on Zondra J. Crumley and they learned that Zondra has a history of harassing and abusing employees in the work place, and COL Fred P. Sharp said that he was not going to put anyone in his office through that. Also, in October 1986, I saw Zondra J. Crumley on National Television - Channel 5 - FOX - "A CURRENT AFFAIR", this broadcasting was for people with bazaar, odd, strange, unusual, peculiar encounters. Zondra J. Crumley said that she had had 36 to 40 people fired from the Federal Government and by doing this Zondra J. Crumley felt that she was gifted. But, during the hearing with MSPB on 31 August 1992 and 1 September 1992, Zondra J. Crumley lied under OATH when she stated that I was the only person that she has ever had removed from the Federal Government Service. Zondra J. Crumley IS A NUT CASE. This is a pattern Zondra J. Crumley used to get federal government employees removed from federal service. And, I'm sure out of the 40 employees in

which Zondra J. Crumley has had removed, all 40 employees are blacks. COL Richard J. Hampton hired Zondra J. Crumley with the intentions of getting someone fired and this is disgraceful. When I first saw Zondra J. Crumley at the AFDW Contracting Center, Building 3534, Andrews AFB, I recognized her right away; but Zondra J. Crumley tried to be evasive. She turned away from me and refused to talk to me.

In March 1992, I went to the EEO, Bolling AFB, I spoke with Crystal Metcalf-Weinstein, HQ AFDW/Chief EEO Counselor, Bolling AFB. Crystal explained that all of the documents that I had filed through the union could not be filed at the EEO. Its against the rules and regulations, and all of the documents were untimely anyway. Because, I had 30 calendar days from the time I received each document to file a complaint with the EEO. But, Crystal stated that all of the documents were good documentation and if I receive anymore documents from Zondra J. Crumley, that I should bring them to her immediately. I then explained to Crystal that I would be getting a Notice of Termination. Crystal wanted to know how did I know this. I explained, because I know Zondra J. Crumley's history. I know her background, and Zondra J. Crumley has used the exact same pattern to have approximately 40 people removed from Federal Government Service.

But, unlike the union, Zondra J. Crumley was afraid, she was petrified of the EEO. My first visit to the EEO, Bolling AFB was in March 1992. When Zondra J. Crumley learned that I had switched over from the union to the EEO, Zondra just panicked. She was like a child in a grocery store when he has lost his parent. (When a child realizes that he has lost his parent in a grocery store, immediately he starts running from corner to corner in desperation.)

Approximately, the first of second week in April 1992, Zondra invited the construction section to the Andrews Officer's Club for breakfast to announce that she would be leaving for retirement and she would be moving back to Arizona to be with her family. But, between the time that I filed my EEO complaint and Zondra inviting the construction section to breakfast, Zondra was called in by General Bernard L. Mitchell for a conference. This one conference did not go well for Zondra J. Crumley. Zondra said where she was going when she left the office; and therefore, I made it a point to stay in the office until she returned. If for nothing else but to observe her expressions. When Zondra J. Crumley returned to the office, she was so angry with me, until she would have smacked me in my face, if she thought for a second that she could have gotten away with it. Zondra just couldn't wait to get out of dodge. Was Zondra J. Crumley running for cover here? ZONDRA J. CRUMLEY WAS FIRED. But, she contacted the following personnel office to no avail: Department of Agriculture; Department of Labor; Interior Department; Bureau of Engraving and Printing Office, Department of Transportation. Zondra even talked about going back to Edwards AFB, California, where she came from prior to coming to Andrews AFB.

Also, Mr. Jack E. Bynane and COL Richard J. Hampton were called in for a conference with General Bernard L. Mitchell. It was approximately seven (7) work days between the time of the meeting with General Mitchell and the time Mr. Jack E. Bynane left for retirement. But, Mr. Jack E. Bynane was one of the good guys. Mr. Jack E. Bynane was in my corner.

In June 1992, when I received the Notice of Termination, I wrote a couple of letters to Joanne Y. Mohn to have this Notice of Termination rescinded, but nothing happen. As a matter of fact, the

first letter was misplaced by Joanne Y. Mohn or COL Richard J. Hampton.

I took the Notice of Termination to EEO, Bolling AFB and filed it there. Then Crystal Metcalf-Weinstein explained that I could file my case with the MSPB; or with the Main EEOC on 18th Street, NW; or take this case directly to court.

The main reason for all of the unlawful retaliation is because of the Notice of Reprimand, dated 18 January 1991. I went to COL Richard J. Hampton to complain about Ralph Riccio making an ass of himself in the work place. However, I was not the first person to complain to COL Richard J. Hampton about Ralph Riccio's behavior in the work place. Mrs. Joan Zue complained before she retired, which was approximately May 1990. I made a second complaint 8 November 1990.

At some point, COL Richard J. Hampton realized that he had cut his throat. A little voice was telling him that it might be over. On 3 June 1992, during a final interview with counselor Gino Yannotti, COL Richard J. Hampton had the audacity to direct Gino Yannotti to tell me that if I wanted to win my case, I better not mention anything about the Notice of Reprimand. Could this have been a threat? Also, COL Richard J. Hampton was seeking to become a One Star General. He had been turned down three of four times for this One Star General. This man was so anger at Clarine Stephens until he was furious.

On 19 June 1992, I tried to clear base, when Special Police SGT Miller and Special Police SGT Derinzt stop me at the North Gate, if COL Richard J. Hampton had order these two police to slap handcuffs on Clarine Stephens and lock her up some place, they would have. This action is

unwarranted. I am exhausted from the harassment and the abuse and the lies caused by Zondra J. Crumley and Richard J. Hampton. COL Richard J. Hampton is very abusive and Zondra J. Crumley is very sick. And, they both were attractive to each others abusive charm. They were fascinated by each others dirty, underhanded abusiveness.

I compare Zondra J. Crumley with a drug abuser. The only difference is that a drug abuser snorts cocaine, shots up with a needle and guzzle booze in order to get his kicks. He even uses his coat as a blanket to wrap up his booze, in order to save it for the next guzzle. But, with Zondra J. Crumley she fabricates lies, use phony documents to have black people removed from the federal government service to get her kicks. This is a sickness, and Zondra J. Crumley has a history of this kind of dirty underhanded abuse. She has used the exact same pattern each time. Zondra J. Crumley was fascinated by doing this sought of thing. Zondra J. Crumley is a sick neurotic woman bitter with the world with an evil heart. Hardhearted and evil with mankind.

My dismissal (Termination) was in retaliation for filing complaints with EEO, Bolling AFB in 1992. And for using the Notice of Reprimand, dated 18 January 1991, WHICH GOT COL RICHARD J. HAMPTON FIRED.

The Notice of Decision to Remove for Unacceptable Performance (Notice of Termination), dated 12 June 1992, was signed by Joanne Y. Mohn. Joanne Y. Mohn had been in this position for approximately one month before signing this document. But, Joanne Y. Mohn signed this document against her will. Because, I listened to the conversation between Joanne Y. Mohn and

COL Richard J. Hampton. Joanne was trying to say that she is not the one to sign the Termination. I heard COL Richard J. Hampton when he was telling Joanne Y. Mohn that she had to sign this document and he stated that "you will sign it, because you do want that GS-14 in my office". COL Richard J. Hampton used the Promotion GS-14 as a weapon to force Joanne Y. Mohn to sign the Notice of Decision to Remove for Unacceptable Performance (Notice of Termination). (Mr. Jack E. Bynane was the predecessor to Joanne Y. Mohn in this position). The Notice of Termination (the Notice of Decision to Remove for Unacceptable Performance, dated 12 June 1992), is cold, cruel and unlawfully retaliation for my protected EEO activity caused by the defendant.

On 19 June 1992, was my last day for work with the Contracting Center, 1100 CNS/CNC, Andrews AFB, Building 3534. But, before leaving home on the morning of 19 June 1992, I received two very unusual, very disturbing, very shocking phone calls from Capt James Ferncez. Capt James Ferncez called to see if I was coming to work, he had never done this before. When I arrive at the office to pick-up some of my training material and to clear base, I was treated like a common criminal, I was treated as if though I was going to steal some of the Air Force Property or something. I felt threatened. MSGT Donald Anderson and Captain James Ferncez locked the doors to the office and wouldn't let me leave the office. Once I got out, I felt I had to go straight home. Special Police SGT Miller was in a Special Police Car; when he met me on the road to the North Gate, he put his head out the window and yelled for me to stop. When I got to the North Gate I was stopped by Special Police SGT Derinzt. Special Police SGT Derinzt was running to close the North Gate so that I wouldn't be able to leave the

base. I felt that I was under arrest. This was unlawful retaliation, directed by COL Richard J. Hampton. I was so embarrassed and humiliated. COL Richard J. Hampton's famous words "I do not get mad, I get even".

In May 1992, I went to the Bureau of Engraving and Printing Office, seeking employment, but when Ann Rush, the person who interviewed me in August 1992, called back to Andrews AFB, 1100 CNS/CNK to very employment, (then) Capt James Ferncez told Ann Rush that I was not doing GS-1102-11 work; and therefore, I was not hired. But, by the time the MSPB Hearing came up, Capt James Ferncez had made Major. Major James Ferncez was wearing the gold clusters on his shoulders. Maj. Ferncez came to the MSPB Hearing, but he did not testify. During breaktime in the hallway, Maj. Ferncez stated that he was not going to testify. He said "I am not going in there". It is okay to keep me from getting employment to say that Clarine Stephens can't do GS-1102-11 work, but to get on the witness stand and testify under OATH that Clarine Stephens can't do GS-1102-11 work is a bit too much. Maj. Ferncez promotion was also used as a weapon. However, Mr. Richard J. Hampton didn't attend the MSPB Hearing. Mr. Richard J. Hampton hired Zondra J. Crumley with the intentions to get someone fired. My dismissal (Termination) was in retaliation for filing complaints with the EEO, Bolling AFB in . 1992. In response to the EEO Counselor's Report dated 5 June 1991, which stated that COL Richard J. Hampton said that I took a mandatory contracting course with other employees of the same rank and failed the course, which he states is unacceptable performance. It is true that I failed the Advanced MDAC Course in August 1991. But, Ronna Belcher (White) took the exact same Advanced MDAC Course long before I did and failed; but, was promoted to a GS-

1102-12. And also, she was selected employee of the quarter in 1992.

Barbara Westmoreland-Moore another employee GS-1102-11 had told everyone, including COL Richard J. Hampton that I was/am a Lesbian. Barbara Westmoreland-Moore continued to make malicious statements with the intent to destroy of damage my reputation. But, this was okay with Richard J. Hampton. Barbara Westmoreland-Moore is a trouble maker.

I AM A VICTIM OF LIES AND DECEIT: I was making malicious statements against another employee and a supervisor with the intent to destroy or damage their reputation. I was/am a drug addict and abusing alcohol. I didn't do my work as a GS-1102-11, Poor performance. I failed the Advanced MDAC Course, even though someone else failed and was promoted, again poor performance. I was/am a Lesbian, but, this lie didn't matter. Making malicious statement with the intentions to destroy or damage my reputation didn't seem to matter to COL Hampton. It seems as if Richard J. Hampton, Zondra J. Crumley and Barbara Westmoreland-Moore just wanted to destroy my life.

The entire period I worked for the Federal Government, I have always been congenial, courteous and compassionate. I always worked with all efforts to please my supervisors. I was always dedicated to my job, to perform my duties. I always enjoyed my work. I always worked hard and far beyond the call of duty. I worked at Bolling AFB/Andrews AFB from February 1984 to June 1992. During this time, I assisted and trained many other administrators. I received many outstanding awards. I got Superior ratings. But, just the seven (7) months working for Zondra J. Crumley, I went from Superior/Excellent to Unsatisfactory/Poor Performance.

CONCLUSION: This is one ugly, cruel, complicated case. Resulting from this case, I am. Seeking as relief: Severance pay; Back pay; I want my job back; I want my With-in Grade, due 9 February 1992, GS-1102-11, Step 7: pay for the two-day suspension; fringe benefits; all legal fees; and punitive damages (exemplary damages) for the defendant's wrong doing. For all of the embarrassment, the humiliation, for all of the pain and suffering, I am asking for $200.00 Million resulting from this case. THIS IS MY RETIREMENT.

PLEASE NOTE: I am not an attorney. I cannot afford an attorney; therefore, I have to represent myself. I am still having financial difficulties, as a result of this case.


*Clarine Stephens*
CLARINE STEPHENS
6206 8th Street, NW
Washington, DC 20011-1923
(202) 882-8349

DATE: 25 April 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLARINE STEPHENS
6206 8^(TH) STREET, NW
WASHINGTON, DC 20011-1923
              Plaintiff

Vs

MICHAEL WYNNE
SECRETARY OF THE AIR FORCE
1670 Air Force Pentagon, SAF/OS
Washington, DC 20330-1670
              Defendant

## STATEMENT OF FACTS

I filed the petition for writ of certiorari December 27, 2004. However, the petition was out-of-time. The date of the lower / appeals court judgment or order denying a timely petition for rehearing was September 13, 2004. Therefore, the petition was due on or before December 12, 2004. In accordance with the Supreme Court Rules 13.1, 29.2 and 30.1. I calculated the 90 days for filing the petition from the date of the issuance of the Mandate, which is incorrect. Supreme Court Rule 13.3.

As stated in the clerk's letter dated December 28, 2004, when the time to file a petition for writ of certiorari in a civil case (habeas action included) has expired, the court no longer has the power to review the petition.

However, I filed a Motion on January 5, 2005, for the Supreme Court to file the petition

06 0751

FILED
APR 2 5 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

for writ of certiorari out-of-time, and review the petition. But, the Motion was denied February 22, 2005.

I think the reasons for the 90 days time elapse, was that I was dealing with a Bankruptcy Court (Chapter 13), running to and from the attorney's office. Running to and from the dentist to have all of my teeth extracted. Having problems with car repairs, without money to support any of this. I was having so much confusion until I just lost all sense of directions. I apologize to the courts for letting this happen.

But at this point, I am searching for a DOCKET NUMBER. And I have been told that the DOCKET NUMBER has to come from the Supreme Court.

In October 2004, when case #04-5015 was with the United States Court of Appeals, a gentlemen with the U.S. Appeals Court returned my phone call and left a voice mail. He stated that the case was sent back to the Air Force. And, in September or October 1997, when I visited the Supreme Court, I was told that the case had to be sent back to where it originated in order to be won.

*Clarine Stephens*
CLARINE STEPHENS
6206 8th Street NW
Washington, DC 20011-1923

DATE: April 25, 2006